ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 21 2000

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WESTERN OIL AND GAS J.V., Inc. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. |
| | ) |
| JOHN L. GRIFFITHS, JR., an individual, | ) 3-00CV2770-D |
| CASTLEROCK OIL COMPANY, INC., | ) |
| a Texas corporation, | ) |
| CASTLEROCK OIL COMPANY, INC., | ) |
| a Louisiana corporation, | ) |
| CANAAN RESOURCES, INC., | ) |
| a Texas corporation, | ) |
| DAVID C. TYRRELL, JR. a/k/a | ) |
| DAVID C. TYRELL, JR., an individual, | ) |
| TURTLE CREEK RESOURCES, INC., | ) |
| a Louisiana corporation, | ) |
| MERRITT OPERATING, INC. | ) |
| a Louisiana corporation, | ) |
| ASM EXPLORATION, INC., | ) |
| a Louisiana corporation, | ) |
| LLOG EXPLORATION COMPANY, | ) |
| a Louisiana corporation, | ) |
| and JOE B. ABBEY, an individual and as Trustee, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff, Western Oil and Gas J.V., Inc., for its causes of action against the Defendants alleges and states:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332 (diversity of citizenship). The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

2. Venue in the Northern Division of Texas is proper under 28 U.S.C. § 1391 because the claim arose in this district.

## Parties

3.      Plaintiff, Western Oil & Gas J.V., Inc. ("Plaintiff"), is a corporation incorporated under the laws of the State of New York with its office and principal place of business located in Rye, New York.

4.      Defendant, John L. Griffiths, Jr. ("Defendant Griffiths") is a resident and citizen of the State of Texas. He may be served with process at 7417 Turtle Creek Boulevard, Dallas, Texas 75225.

5.      Defendant, Castlerock Oil Co., Inc. ("Defendant Castlerock"), is a corporation incorporated under the laws of the State of Texas with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, Norrice F. Wilson, Jr., 10123 Sagecourt Drive, Houston, Texas 77089.

6.      Defendant, Castlerock Oil Co., Inc. ("Defendant Castlerock Oil"), is a corporation incorporated under the laws of the State of Louisiana with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, Ernest A. Burguieres III, 631 St Charles Avenue, New Orleans, Louisiana 70130.

7.      Defendant, Canaan Resources, Inc. ("Defendant Canaan"), is a corporation incorporated under the laws of the State of Texas with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, Gary G. Leeper, 8111 LBJ Freeway, Suite 860, Dallas, Texas 75251.

8.      Defendant, David C. Tyrrell, Jr. a/k/a David C. Tyrell, Jr. ("Defendant Tyrrell") is a resident and citizen of the State of Texas. He may be served with process at 12 Turtle Creek Bend, Dallas, Texas 75204.

9.      Defendant, Turtle Creek Resources, Inc. ("Defendant Turtle"), is a corporation incorporated under the laws of the State of Louisiana with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, George C. Gibson, 433 Metairie Road, Suite 404, Metairie, Louisiana 70005.

10. Defendant, Merritt Operating ("Defendant Merritt"), is a corporation incorporated under the laws of the State of Louisiana with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, Michael S. Forshey, 750 N. St. Paul St., Suite 1800, Dallas, Texas 75201.

11. Defendant, ASM Exploration, Inc. ("Defendant ASM"), is a corporation incorporated under the laws of the State of Louisiana with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its registered agent for service, George C. Gibson, 433 Metairie Road, Suite 404, Metairie, Louisiana 70005.

12. Defendant, LLOG Exploration Company ("Defendant LLOG"), is a corporation incorporated under the laws of the State of Louisiana with its office and principal place of business located in Dallas, Texas. It may be served with process by serving its company officer, George C. Gibson, 433 Metairie Road, Suite 404, Metairie, Louisiana 70005.

13. Defendant, Joe B. Abbey, individually and as Trustee, ("Defendant Abbey"), is a resident and citizen of the State of Texas. He may be served with process at 3109 Carlisle Street, Suite 100, Dallas, Texas 75204-1128.

## Facts Applicable to All Counts
### A. Introduction

14. This is a cause of action by Plaintiff as creditor to, among other relief, set aside as fraudulent certain transfers of real and personal property purportedly made by Defendant Griffiths whether directly or indirectly, for the improper and illegal purposes of delaying, hindering, and defrauding creditors. This is also a suit to set aside as shams certain corporations created by or for the benefit of Defendant Griffiths as part of a scheme to defraud creditors. Such corporations, like the transfers themselves, were a sham. Plaintiff also seeks the appointment of a receiver for all assets of the corporations of Defendant Griffiths and all assets previously held by the corporations and other entities of Defendant Griffiths and seeks to have this Court determine that such corporations are mere "alter egos" of Defendant Griffiths.

### B. The Creation of Judgment Debts

15. The judgment debts at issue arise out of oil and gas related transactions entered into from May, 1992 through March, 1995, between Plaintiff, Defendant Griffiths and Lloyd Petroleum Corporation ("Lloyd").

16. Defendant Griffiths has for many years been in the business of promoting oil and gas investments in Texas, Louisiana and surrounding areas, and is a principal of Lloyd.

17. Lloyd and Defendant Griffiths offered to Plaintiff interests in certain oil and gas leases. Plaintiff entered into eight separate letter agreements with Lloyd from 1992 through 1995, and paid to Lloyd the purchase amounts, in exchange for which Lloyd was to assign to Plaintiff various interests in oil and gas leases. From 1992 to 1995, Plaintiff, pursuant to the letter agreements, invested approximately $1,334,197.00.

18. Lloyd was to serve as operator of the wells drilled on the prospects. Pursuant to the letter agreements, Lloyd and Defendant Griffiths purported to assign certain interests in said oil and gas leases to Plaintiff.

19. The wells to be drilled or reworked on the oil and gas leases described in the letter agreements were never drilled or reworked by Lloyd. Instead, the proceeds of the letter agreements were used by Defendant Griffiths for his own personal benefit and gain and for other oil and gas business dealings, to the detriment of Plaintiff.

20. Plaintiff made written demand upon Lloyd and Defendant Griffiths to refund the sums Plaintiff invested with Defendant Griffiths. From 1993 to 1997, Plaintiff's total cash return on the investments with Defendant Griffiths from the purported wells was approximately $108,354.00.

21. Lloyd and Defendant Griffiths acknowledged that there were amounts due and owing to Plaintiff by Defendant Griffiths, however, Lloyd and Defendant Griffiths maintained that they were not in the position at the present time to pay and desired further time to settle and liquidate the indebtedness.

22. Following demands by the Plaintiffs for damages as a result of the conduct set

forth herein, on or about December 31, 1996, Plaintiff, Lloyd and Defendant Griffiths entered into a settlement agreement and related written promissory note and deed of trust.

23.     The promissory note was a binding contract which obligated Lloyd and Defendant Griffiths to pay Plaintiff the principal sum and accrued unpaid interest on the note on or before June 30, 1997 (the "Note").  As further inducement for Plaintiff to enter into the Note, and as collateral security for Lloyd and Defendant Griffiths' obligations under the Note, Lloyd and Defendant Griffiths executed a Deed of Trust by which they granted Plaintiff a security interest in certain leasehold working interests in Louisiana and Texas of Defendant Griffiths, including working interests in wells commonly known as Norman #1, Herbert #2, and Ramos #1.

24.     Lloyd and Defendant Griffiths failed to make the payment due June 30, 1997, and, therefore, the principal balance plus interest remained unpaid, even though repeated demands were made.

25.     On August 31, 1997, Plaintiff filed a lawsuit styled "Western Oil & Gas J.V., Inc., Plaintiff v. Lloyd Petroleum Corporation, and John Griffiths, Defendants," same bearing Case No. 3-97CV1990-P, in the United States District Court for the Northern Division of Texas.  The complaint alleged (a) claims of breach of contractual duties, (b) claims of unjust enrichment, and (c) common law fraud.

26.     On December 15, 1997, a final Judgment was entered in favor of Plaintiff and against Defendant Griffiths and Lloyd for breach of the Note.  And on November 18, 1998, a final Judgment was entered in favor of Plaintiff and against Defendant Griffiths and Lloyd for statutory and common law fraud.  Said judgments amount to the following:

| | | |
|---|---|---|
| Judgment on Contract Actual: | $ 291,617.00 with interest | |
| | Costs: | $    3,821.94 |
| | Atty's fees: | $  18,085.00 |
| | Total: | $ 313,523.94 |
| | | |
| Judgment on Fraud | Actual: | $1,054,243.00 with interest |
| | Exemplary: | $1,225,843.00 with interest |
| | Costs: | $    1,798.90 |
| | Atty fees: | $  63,405.00 |

      Total:    $2,345,289.90

      Combined:   $2,658,813.80 with interest

Copies of the Judgments are attached hereto as Exhibit A.

  27. In November, 1998, the attached judgment was domesticated in the State of Louisiana in accordance with Louisiana law governing authentication of said judgment.

### C. Transfer of Assets to Sally Griffiths

  28. Subsequent to its initiation of the litigation against Defendant Griffiths and Lloyd, on April 21, 1998, Plaintiff filed a lawsuit styled "Western Oil & Gas J.V., Inc., Plaintiff, vs. John Griffiths, Sally Griffiths and Joe Abbey, Defendants", same bearing Case No. 3-98CV983-G, in the United States District Court for the Northern Division of Texas. The complaint alleged (a) claims to set aside an invalid partition of property, (b) claims to set aside other invalid transfers as fraudulent, (c) claims for conspiracy to defraud, and (d) for declaration of community property subject to satisfy debts.

  29. Plaintiff sought all relief to which it is entitled under federal and/or Texas law, including but not limited to: (a) avoidance of the transfers to the extent necessary to satisfy Plaintiff's claims; (b) an order allowing Plaintiff to levy execution on the assets transferred or their proceeds, and all proceeds and assets currently held by Defendant Griffiths and Sally Griffiths; (c) judgment against Sally Griffiths for the value of the assets fraudulently transferred to her; (d) judgment against any subsequent transferees of the subject assets in the amount of the value of the assets transferred; and/or (e) any other relief the circumstances may require.

  30. On March 19, 1999, a jury verdict was entered in the litigation in favor of Plaintiff and against Sally Griffiths for fraudulent transfer and conspiracy. After the Jury returned its verdict, Plaintiff and Sally Griffiths filed post-trial motions for judgment. Prior to the Court ruling on said motions, Plaintiff and Sally Griffiths settled Plaintiff's claims against Sally Griffiths for the sum of $425,000.00.

### D. Postjudgment Collection Effort

31.     On August 11, 1999, Plaintiff obtained a Turnover Order in the initial litigation against Defendant Griffiths and Lloyd which requires, among other things, that all parties with notice of the Order to turnover all property and money owed to Defendant Griffiths, and any of his related companies, and/or that later come into possession of such property and money, to the U.S. Marshal's office at 1100 Commerce Street, Room 16F47, Dallas, Texas 75242, within thirty (30) days of receiving the notice.  The Turnover Order states that Defendant Griffiths and/or any third party with notice of the Turnover Order, their agents, employees, and those persons in active concert or participation with them, are restrained from conveying, secreting, moving, disposing of or transferring any of the property or any rights therein to any person other than the U.S. Marshall.  A copy of the Turnover Order is attached hereto as Exhibit B.

32.     During August, 1999, counsel for Plaintiff sent the Notice of the Turnover Order to numerous individuals and companies, including Defendant Turtle, Defendant Tyrrell, Defendant Castlerock, and KCM Management, Inc., notifying them of the Turnover Order, and requiring them to turnover to the U.S. Marshall any property and money belonging to Defendant Griffiths and/or one of Defendant Griffiths companies.  Defendant Turtle, Defendant Tyrrell, Defendant Castlerock and KCM Management, Inc. did not respond.  A copy of the Notices are attached hereto as Exhibit C.

33.     On October 11, 1999, Defendant Griffiths, Lloyd and their related companies provided counsel for Plaintiff with a Limited Power of Attorney to ask, receive and deposit into an account established by Plaintiff, all and any sums of money due and payable and belonging to Defendant Griffiths, Lloyd, and any of their related companies.  A copy of the POA is attached hereto as Exhibit D.

34.     From December, 1999 to the present, Plaintiff has collected approximately $25,000.00 in oil and gas production utilizing the Turnover Order and Power of Attorney in partial satisfaction of its judgment against Defendant Griffiths.

### E. The Illusory Nature of Castlerock and Castlerock Oil

35. Although Defendant Griffiths claims to have no assets to satisfy Plaintiff's $2.6 million dollar judgment debt against him, Defendant Griffiths controls and enjoys the beneficial use of assets of Castlerock and Castlerock Oil.

36. Defendant Griffiths maintains his office at Defendant Castlerock, located at 8111 LBJ Freeway, Suite 850, Dallas, Texas. As part of Defendant Griffiths scheme to defraud creditors, Defendant Griffiths claims to be operating through an employment agreement with Defendant Castlerock.

37. Defendant Castlerock Oil, a Louisiana corporation, is an entity formed by Defendant Griffiths on October 11, 1999, or the same day that Defendant Griffiths provided counsel for Plaintiff with the Limited Power of Attorney. The Louisiana Department of Natural Resources in Baton Rouge, Louisiana, corroborates that Defendant Griffiths is associated with Defendant Castlerock Oil and is listed as the "Emergency Contact".

38. Although Defendant Griffiths claims to be operating only through an employment agreement which either does not provide for payment of specific compensation for his services, or provides for such insignificant payments or conditional payments as to nullify creditors' ability to realize on such payments, Defendant Griffiths, in fact, continues to maintain effective control over the assets and management of Defendant Castlerock and Defendant Castlerock Oil.

39. On information and belief, Defendant Griffiths has transferred his interest in some thirty five (35) oil and gas wells located in the State of Louisiana to Defendant Castlerock Oil in order to defraud creditors.

40. The referenced corporations are illusory corporations and are shams. At all times, Defendant Griffiths retained control over and access to the corporate assets or their proceeds. Because each of these purported transfers to Defendant Castlerock and Defendant Castlerock Oil, as well as any other transfer not yet known to Plaintiff, were made fraudulently and with the intent to defraud creditors or, alternatively, were made without receiving reasonable equivalent value in exchange for the transfers, at a time when Defendant Griffiths was insolvent or was

rendered insolvent by such transfers, each is thus void and/or voidable as to creditors, including Plaintiff.

### F.  Canaan is a Mere Alter Ego of Defendant Griffiths

41.   The offices of Defendant Canaan are directly adjacent to Defendant Castlerock, located at 8111 LBJ Freeway, Suite 860, Dallas, Texas.

42.   Defendant Griffiths drives a black Ford Ranger Pick-up truck, Texas license plate number 2WVL73.  This vehicle is registered to Defendant Canaan.

43.   Telephone calls to Defendant Canaan are transferred internally to Defendant Castlerock.  Defendant Griffiths also uses a cell telephone for his business, and the cell telephone and telephone number are leased by Defendant Canaan.

44.   On information and belief, as part of Defendant Griffiths scheme to defraud creditors, Defendant Griffiths and Defendant Canaan have entered into some type of oral consulting agreement wherein Defendant Griffiths provides services to Defendant Canaan, similar to those he provides to Defendant Castlerock, Defendant Castlerock Oil and other entities.

45.   Defendant Canaan is an entity formed by Gary G. Leeper on June 12, 1998, at or about the same time as Plaintiff filed its fraudulent transfer lawsuit against Defendant Griffiths and Sally Griffiths.

46.   Although Defendant Griffiths claims to be operating only through some type of consulting agreement which either does not provide for payment of specific compensation for his services, or provides for such insignificant payments or conditional payments as to nullify creditors' ability to realize on such payments, Defendant Griffiths, in fact, continues to maintain effective control over certain assets and management of Defendant Canaan.

47.   The referenced corporation is in fact the alter ego of Defendant Griffiths and as such, all assets owned, controlled or held by such entity for Defendant Griffiths should be determined to be assets of Defendant Griffiths and ordered to be made available to Plaintiff for satisfaction on its judgment.

48. Upon information and belief, Defendant Griffiths has transferred his interest in property to Defendant Canaan in order to defraud creditors. Because each of these purported transfers, as well as any other transfer not yet known to Plaintiff, were made fraudulently and with the intent to defraud creditors, each is thus void and/or voidable as to Plaintiff.

### G. Alleged Transfer of Assets to Tyrrell, Turtle, ASM, Merritt, and Abbey

49. Upon information and belief, Creek Operating Company, Inc. is an entity formed by Defendant Tyrrell and Defendant Griffiths. Creek Operating Company, Inc. held lease lands in the State of Louisiana, including oil and gas leases relating to oil and gas wells commonly known as the Shinn #1, Norman #1, Herbert #2, and Ramos #1. Said Shinn #1 well has a history of producing significant hydrocarbons from the prospect.

50. As part of Defendant Griffiths scheme to defraud creditors, Defendant Griffiths and Creek Operating Company, Inc. enabled certain properties, including the Shinn #1, Norman #1, Herbert #2, and Ramos #1, to be sold through a sheriffs sale to Defendant Turtle for $2,500.00. Defendant Turtle is a Louisiana entity formed on October 17, 1995, by Defendant's Griffiths friend and business associate, Defendant Tyrrell.

51. Such transfer was made fraudulently and with the intent to defraud creditors or, alternatively, was made without receiving reasonable equivalent value in exchange for the transfers, at a time when Defendant Griffiths was insolvent or was rendered insolvent by such transfers, each is thus void and/or voidable as to creditors, including Plaintiff.

52. Although these properties, including the Shinn well, were transferred to Defendant Turtle, Defendant Griffiths, in fact, continued to maintain effective control and management over such properties.

53. At or about the same time that Plaintiff initiated the lawsuit against Defendant Griffiths and Lloyd on August 31, 1997, Defendant Tyrrell and Defendant Griffiths personally met with and offered to William R. Austin an interest in the Shinn well.

54. Defendant Abbey was counsel of record for Defendant Griffiths (a) in the litigation between Plaintiff, Defendant Griffiths and Lloyd, and (b) in the litigation between

Plaintiff, Defendant Griffiths and Sally Griffiths. Ultimately, Defendant Abbey, as trustee for Creek Operating Company, Inc. and Defendant Turtle, entered into a participation agreement with William R. Austin dated September 17, 1997, whereby Mr. Austin paid approximately $300,610.00, in exchange for which Defendant Abbey as trustee assigned to Mr. Austin a 57% working interest before payout, reduced to a 28.5% working interest after payout. Mr. Austin paid $56,145.00 of said purchase price to Joe B. Abbey as trustee, and paid the remaining $244,465 to KCM Management, Inc. Defendant Turtle and/or Defendant Griffiths were entitled to the back-in, or after payout 28.5% working interest, in the Shinn well.

55. The Shinn well paid out during early 2000, after which time the average production income to Mr. Austin was reduced from approximately $25,000.00 per month to approximately $11,000.00 per month.

56. Defendant Turtle transferred its interest in the Shinn well to Defendant ASM. Defendant ASM is an entity formed by Defendant Tyrrell at or about the same time that Plaintiff initiated the lawsuit against Defendant Griffiths and Lloyd on August 31, 1997. Defendant ASM has or may claim an interest in and to the assets fraudulently transferred from Defendant Griffiths ownership and/or control, to Defendant Turtle; however, any such interest or claim to such asset is part of an overall scheme to defraud creditors of Defendant Griffiths, and is therefore invalid and ineffective as to the Plaintiff.

57. Upon information and belief, at all times, Defendant Griffiths retained control over and access to certain proceeds of the Shinn well and has continued to use and enjoy certain proceeds for his own personal benefit and gain, to the detriment of his creditors, including Plaintiff.

58. In August, 1999, KCM Management, Inc. operated the Shinn Well, and was to make distributions of production income (before and after payout) from the Shinn well to Defendant Griffiths and/or one of his related companies, Log, Inc. During August, 1999, counsel for Plaintiff sent the Notice of the Turnover Order to KCM Management, Inc. notifying it of the Turnover Order, and requiring it to turnover to the U.S. Marshall any property and

11

money belonging to Defendant Griffiths and/or one of Defendant Griffiths companies. KCM Management, Inc. did not respond.

59. Defendant Merritt now operates the Shinn well, and may be distributing production income from the such well to the Defendant Griffiths and/or one of the above referenced corporations. Defendant Merritt has or may claim an interest in and to the assets fraudulently transferred from Defendant Griffiths ownership and/or control, to Defendant Turtle, Defendant Abbey as trustee and/or Defendant ASM; however, any such interest or claim to such asset is part of an overall scheme to defraud creditors of Defendant Griffiths, and is therefore invalid and ineffective as to the Plaintiff. On November 10, 2000, counsel for Plaintiff sent the Notice of the Turnover Order to Defendant Merritt notifying it of the Turnover Order, and requiring it to turnover to the U.S. Marshall any property and money belonging to Defendant Griffiths and/or one of Defendant Griffiths companies. Defendant Merritt did not respond.

60. Upon information and belief, at all times, Defendant Griffiths retained control over and access to an interest in the Shinn well or the proceeds and has continued to use and enjoy such asset or its proceeds for his own personal benefit and gain, to the detriment of his creditors, including Plaintiff. Because each of these purported transfers to Defendant Turtle, Defendant Abbey as trustee, Defendant ASM, and Defendant Merritt, as well as any other transfer not yet known to Plaintiff, were made fraudulently and with the intent to defraud creditors or, alternatively, were made without receiving reasonable equivalent value in exchange for the transfers, at a time when Defendant Griffiths was insolvent or was rendered insolvent by such transfers, each is thus void and/or voidable as to creditors, including Plaintiff.

### H. LLOG is a Mere Alter Ego of Defendant Griffiths

61. On information and belief, as part of Defendant Griffiths scheme to defraud creditors, Defendant Griffiths and Defendant LLOG have entered into some type of oral consulting agreement wherein Defendant Griffiths provides services to Defendant LLOG, similar to those he provides to Defendant Castlerock, Defendant Castlerock Oil and other entities.

62. Defendant LLOG is an entity formed by George Gibson and/or Defendant

12

Griffiths prior to the time that Plaintiff invested in the eight letter agreements with Lloyd.

63.     Although Defendant Griffiths claims to be operating only through some type of consulting agreement which either does not provide for payment of specific compensation for his services, or provides for such insignificant payments or conditional payments as to nullify creditors' ability to realize on such payments, Defendant Griffiths, in fact, continues to maintain effective control over certain assets and management of Defendant LLOG.

64.     The referenced corporation is in fact the alter ego of Defendant Griffiths and as such, all assets owned, controlled or held by such entity for Defendant Griffiths should be determined to be assets of Defendant Griffiths and ordered to be made available to Plaintiff for satisfaction on its judgment.

65.     Upon information and belief, Defendant Griffiths has transferred his interest in property to Defendant LLOG in order to defraud creditors. Because each of these purported transfers, as well as any other transfer not yet known to Plaintiff, were made fraudulently and with the intent to defraud creditors, each is thus void and/or voidable as to Plaintiff.

## COUNT AGAINST ALL DEFENDANTS TO SET ASIDE TRANSFERS AS FRAUDULENT

66.     Plaintiff incorporates by reference paragraphs 1-65 of the Complaint.

67.     The purported transfers described above were actually or constructively fraudulent as to Plaintiff in that:

(a)     Plaintiff was a creditor of Defendant Griffiths before each such purported transfer;

(b)     Defendant Griffiths purported to transfer the assets described above to one or more of defendants or third parties, with the intent to hinder, delay and defraud creditors, including Plaintiff;

(c)     Defendant Griffiths individually attempted to render himself insolvent at the time of each such transfer, was insolvent at the time of each such transfer, and/or was rendered insolvent as a

result; and

(d) (i) Defendant Griffiths individually engaged in the transfers recited herein without receiving a reasonable equivalent value in exchange for the transfer or obligation at a time when Defendant Griffiths was engaged or was about to engage in a business or business transaction for which the remaining assets of Defendant Griffiths were unreasonably small in relation to his business or the transaction; or (ii) Defendant Griffiths intended to incur, or believed or reasonably should have believed that Defendant Griffiths would incur debts beyond his ability to repay them as they became due.

68. Plaintiff has been damaged as a result of each of the transfers described above, and Plaintiff seeks all relief to which it is entitled under federal and/or Texas law, including but not limited to:

(a) avoidance of the transfers to the extent necessary to satisfy Plaintiffs claims;

(b) an order allowing Plaintiff to levy execution on the assets transferred or their proceeds, and all proceeds and assets currently held by any of Defendants;

(c) judgment against the Defendants for the value of the assets transferred;

(d) judgment against any subsequent transferees of the subject assets in the amount of the value of the assets transferred; and/or

(e) any other relief the circumstances may require.

## COUNT AGAINST CASTLEROCK AND CASTLEROCK OIL: CLAIM TO SET ASIDE SHAM AND ILLUSORY CORPORATIONS

69. Plaintiff incorporates by reference paragraphs 1-68 of the Complaint.

70. In effect the corporations are entities that were created by Defendant Griffiths for his own respective benefit. The corporations are illusory and a sham.

71. Because Defendant Castlerock and Defendant Castlerock Oil are not valid corporations, Plaintiff requests that the Court set aside the corporations as invalid, void,

voidable, and/or shams and, upon entry of judgment in favor of Plaintiff on its Judgment, allow Plaintiff to execute on all relevant assets of the Defendant Griffiths' as well as those assets that were held by the corporations' and which may have been transferred to third parties.

## COUNT AGAINST ALL DEFENDANTS:
## REQUEST FOR IMPOSITION OF CONSTRUCTIVE TRUST

72.  Plaintiff incorporates by reference paragraphs 1-71 of the Complaint.

73.  Plaintiff has been damaged as a result of the establishment of the corporations', and/or the transfers of assets to any of the above-named defendants and Plaintiff hereby seeks an order from the Court imposing a constructive trust, with Defendant Tyrrell as trustee, and with Plaintiff as the beneficial owner of the assets of Defendant Griffiths currently held by defendants named above.

## COUNT AGAINST ALL DEFENDANTS:
## THE TRANSFERS AND CORPORATIONS ARE ULTRA VIRES

74.  Plaintiff incorporates by reference paragraphs 1-73 of the Complaint.

75.  The creation of the corporations, the transfers into and out of the same, and the above-described transfers to any defendants are against public policy and ultra vires. The creation of the corporations and all transfers by the Defendant Griffiths to any defendants should be considered contrary to the public policy of the State of Texas, and thus unenforceable as to creditors, including Plaintiff.

76.  Plaintiff seeks all relief to which it is entitled considering the ultra vires nature of the corporations, and/or the above-described transfers, including but not limited to:

 (a) avoidance of the fraudulent transfers to the extent necessary to satisfy Plaintiffs Judgment;

 (b) an order setting aside the corporations' as void, voidable, ultra vires, and/or shams and allowing Plaintiff to execute on all assets held by the corporations' and all assets once held by the Defendant Griffiths' that were transferred to third parties;

(c) an order setting aside any transfers to any Defendants as ultra vires and allowing Plaintiff to apply said Defendants' assets against its claims, and to execute on said Defendants' assets that have been transferred to third parties;

(d) an order imposing a constructive trust, with Defendant Tyrrell as trustee, and with Plaintiff as the beneficial owner of the above-described assets held by any Defendant;

(e) an order restraining Defendants, their agents, servants, representatives, employees, and attorneys from transferring, selling, concealing, destroying, disposing of, pledging, encumbering, or changing the character or form or location, in any manner, of any of the above-described assets, pursuant to applicable law;

(f) costs of suit; and

(g) all other relief to which Plaintiff is entitled.

### COUNT AGAINST ALL DEFENDANTS: UNJUST ENRICHMENT

77. Plaintiff incorporates by reference paragraphs 1-76 of the Complaint.

78. The acquisition and retention of all referenced assets held by any of the above-named Defendants, is wrongful and each said Defendant would be unjustly enriched if they were to be permitted to retain such assets. Plaintiff is therefore entitled to equitable relief from this Court, including but not limited to the relief set forth in paragraph above.

### COUNT AGAINST ALL DEFENDANTS: APPOINTMENT OF TRUSTEE

79. Plaintiff incorporates by reference paragraphs 1-78 of the Complaint.

80. Plaintiff further requests, in the alternative to the imposition of a constructive trust, that this Court issue an order placing the assets described herein under the control of the Court and appointing a trustee to hold such assets to satisfy Plaintiffs Judgment.

### COUNT AGAINST DEFENDANTS: REQUEST FOR DECLARATION OF ALTER EGO\SINGLE BUSINESS ENTITY AND REQUEST FOR APPLICATION OF ASSETS TO PLAINTIFFS JUDGMENT

81. Plaintiff incorporates by reference paragraphs 1-80 of the Complaint.

82. Plaintiff requests a declaration from the Court that all Defendants are in fact alter egos of and/or part of a single business enterprise with Defendant Griffiths and as such, all assets owned, controlled or held by such Defendants for Defendant Griffiths should be determined to be assets of Defendant Griffiths.

83. Plaintiff further requests the Court enter an order directing the assets of the above-named Defendants be made available to Plaintiff for satisfaction its Judgment.

84. Plaintiff also requests any and all other legal or equitable relief to which it may be entitled hereunder, including its attorney fees.

### COUNT AGAINST ALL DEFENDANTS:
### CLAIM FOR CONSPIRACY TO DEFRAUD

85. Plaintiff incorporates by reference paragraphs 1-84 of the Complaint.

86. All Defendants participated, in full or in part, in the transfers described above, as well as the creation of the corporations, with full knowledge of the creditor claims against Defendant Griffiths and his financial condition.

87. By virtue of Defendants' actions set forth above, such Defendants knew or should have known of the fraudulent nature of their actions.

88. All of the foregoing actions of Defendants were done pursuant to agreement, with the intent to hinder, delay and/or defraud the creditors of Defendant Griffiths including Plaintiff, and therefore constitute a conspiracy to defraud.

89. Plaintiff is entitled to relief from the Court, including but not limited to:

(a) judgment in personam against all Defendants for the full amount of Plaintiffs Judgment, plus interest;

(b) judgment in personam against all Defendants for punitive damages in an amount not less than the full amount of Plaintiffs Judgment, plus interest;

(c) judgment in personam against all Defendants for Plaintiffs costs and attorney fees; and

(d) all other relief to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

Respectfully submitted,

ONE OF THE ATTORNEYS FOR
WESTERN OIL & GAS J.V., INC., PLAINTIFF

_____
**ROBERT RUOTOLO, Esq.**
Texas Bar Number 17398700
**Law Offices of Eric D. Ryan, P.C.**
12700 Preston Road
Suite 145
Dallas, Texas 75230
(214) 265-7997 (Telephone)
(214) 265-7998 (Telecopier)

**SHELDON B. SWAN**
Oklahoma Bar Number 11538
**Dunn Swan & Cunningham**
2800 First Oklahoma Tower
210 West Park Avenue
Oklahoma City, Oklahoma 73102
(405) 235-8318 (Telephone)
(405) 235-9605 (Telecopier)